# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Leticia Zuniga Escamilla,

        Plaintiff,

    v.

SMS Holdings Corporation,
Service Management Systems, Inc.,
and Marco Gonzalez,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 09-2120 ADM/JSM

_____

Lisa C. Stratton, Esq., Jill R. Gaulding, Esq., and Jonathan J. Dahl, Esq., Gender Justice, St. Paul, MN, and James H. Kaster, Nichols Kaster PLLP, Minneapolis, MN, on behalf of Plaintiff.

Kurt J. Erickson, Esq., and Sarah M. Fleegel, Esq., Jackson Lewis LLP, Minneapolis MN, and Thomas E. Marshall, Esq., Engelmeier & Umanah, P.A., Minneapolis, MN, on behalf of Defendant Marco Gonzalez.

Britt M. Gilbertson, Esq., and Gregory J. Stenmoe, Esq., Briggs & Morgan, PA, Minneapolis, MN, and Kara E. Shea, Esq., Sarah C. Maxwell, Esq., and T. Harold Pinkley, Esq., Miller & Martin PLLC, Nashville, TN, on behalf of Defendants SMS Holdings Corporation and Service Management Systems, Inc.

_____

## I.  INTRODUCTION

The above matter is before the undersigned District Judge for rulings on Defendant SMS Holdings Corporation's Objections ("SMS's Objections") [Docket No. 421] and Defendant Marco Gonzalez's ("Gonzalez") Appeal and Objections ("Gonzalez's Objections") [Docket No. 420] to Magistrate Judge Janie S. Mayeron's June 28, 2011 Order.  By the Order dated June 28, 2011 [Docket No. 419] ("Order"), Judge Mayeron both granted in part and denied in part the Plaintiff's Motion to Compel and for Spoliation Sanctions [Docket No. 331].  For the reasons stated below, both Gonzalez's and SMS's Objections are overruled and the Order is affirmed.

## II.  BACKGROUND

The facts and procedural history relevant to this discovery dispute are set forth thoroughly in Judge Mayeron's June 28, 2011 Order and are incorporated by reference. Accordingly, only a short outline of the relevant facts and procedural history is presented here.

Plaintiff Leticia Zuniga Escamilla ("Zuniga") alleges sexual harassment and sexual battery by her supervisor Gonzalez while she was employed by Defendants SMS Holdings Corporation and Service Management Systems, Inc. (collectively "SMS").  See First Am. Compl. [Docket No. 149].  Zuniga and Gonzalez were both employees of SMS, which provided cleaning and maintenance services to Ridgedale Mall in Minnetonka, Minnesota.  Id. ¶¶ 17-20. Zuniga has asserted claims of assault and battery against Gonzalez, and claims against SMS for sexual harassment, constructive discharge, retaliation, and reprisal under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2, and the Minnesota Human Rights Act ("MHRA"), as well as a claim of respondeat superior.  See First Am. Compl. ¶¶ 39-65.

On March 11, 2008, Zuniga filed her charge of discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC").  Id. ¶ 10.  On March 17, 2008, the EEOC informed SMS that it had a duty to preserve personnel records relevant to the charges brought by Zuniga.  See Decl. of Lisa C. Stratton in Supp. of Mot. to Compel and for Spoliation Sanctions ("Stratton Spoliation Decl.") [Docket No. 339] Ex. R.  On April 28, 2008, Gonzalez returned his SMS work computer to SMS upon leaving employment with them.  Id.

On August 11, 2009, Zuniga filed her Complaint, and on November 10, 2009, Judge Mayeron issued a pretrial scheduling order that directed "[t]he parties [to] preserve all electronic

documents that bear on any claims, defense or the subject matter of the lawsuit."  Pretrial

Scheduling Order [Docket No. 35].

On December 31, 2009, and June 14, 2010, Zuniga served her first set of interrogatories

and document requests on SMS.  Decl. of Lisa C. Stratton in Supp. of Mot. to Compel

Electronically-Stored Information and Other Discovery [Docket No. 214] ("Stratton ESI Decl.")

Exs. 23 (Interrogatories), 26 (SMS's Response to Request for Production of Documents).  The

definition of "document" included Electronically Stored Information ("ESI").  Stratton ESI Decl.

Ex. 23.  SMS responded to this written discovery in March 2010, but produced no ESI.  See

Stratton ESI Decl. Ex. 26.

On September 22, 2010, Zuniga filed a Motion to Compel Electronically-Stored

Information and Other Discovery [Docket No. 211] seeking an order requiring Gonzalez to make

available for forensic copying any personal or home computer he used in connection with work

at SMS or communications related to the present action.  In particular, Zuniga sought ESI related

to certain memoranda authored by Gonzalez from April 24, 2006 to January 25, 2008

(collectively "the Gonzalez memoranda").  See Order at 68.  The Gonzalez memoranda include

negative information about Zuniga that Gonzalez claims he obtained from various sources.  Id.

The Gonzalez memoranda were produced to Zuniga in paper form.  Zuniga claims that Gonzalez

fabricated the memoranda in order to defend himself from her charges.  Id.  Zuniga avers her

allegation that Gonzalez fabricated the memoranda can be corroborated with ESI showing that

the documents were not prepared on the dates shown on their face.  Id. at 68.

At the hearing on Zuniga's motion to compel on October 14, 2010, Gonzalez's counsel

stated that Gonzalez had used two different personal computers while employed at SMS, a

personal computer at home and his wife's laptop computer.  Tr. of Oct. 14 Hearing [Docket No.

433] 172-175, 207.  Gonzalez stated that he did not search his wife's computer for responsive

documents and on or around July 2009, it was sent to his wife's sister in Mexico as a gift, was

subsequently sold, and its present location was unknown.  Nov. 5, 2010 Marco Gonzalez Aff.

[Docket No. 273] ¶¶ 2, 6, 7.

After the hearing on Zuniga's motion to compel, Gonzalez retained a consulting firm

specializing in digital forensics and electronic discovery to examine Gonzalez's home computer

to determine whether certain key words could be found on the computer.  See Decl. of Jonathan

J. Dahl in Supp. of Mot. to Compel and for Spoliation Sanctions ("Dahl Spoliation Decl.")

[Docket No. 333], Ex. L (Declaration of Brendan K. Gleason) ¶¶ 2, 6, Attachment B.  As part of

this investigation, the consulting firm determined that the computer's operating system had been

reinstalled on October 5, 2010.  Id. ¶ 7.  Gonzalez stated that he searched for documents relevant

to Zuniga's claims in this litigation prior to reinstalling the operating system, and that the re-

installation of his operating system on his home computer was done at the suggestion of Best

Buy's Geek Squad, as his computer was not functioning properly.  See Feb. 17, 2011 Marco

Gonzalez Decl. [Docket No. 351] ¶¶ 5-9.  Judge Mayeron determined that in light of Gonzalez's

failure to preserve evidence, an additional limited deposition of Gonzalez regarding his home

computer and his wife's computer was appropriate.  Order at 83.  In addition, Judge Mayeron

also allowed Mark Lanterman ("Lanterman"), Zuniga's computer forensic consultant, to search

Gonzalez's home computer.  Id.

SMS's first attempt to locate Gonzalez's former work computer did not occur until April 2010.  See Stratton Spoliation Decl. Ex. A ("Emerson Dep.") 39:22-40:2.  On May 23, 2010,[1] SMS's forensic analysis company, DSi, obtained a forensic image of Gonzalez's former work computer.  Id. 42:19-21.  DSi searched the forensic image of the hard drive, including deleted data, using a key word list comprised of: the names of the parties, relevant locations, and slang terms for sex acts in both English and Spanish.  See Decl. of Sherry Hicks in Supp. of Defs.' Response to Pl.'s Mot. to Compel Electronically Stored Information [Docket No. 243] ¶¶ 6-7. This forensic review of Gonzalez's work computer did not produce any relevant information. Decl. of Sarah M. Fleegel in Supp. of Def. Gonzalez's Opp. to Pl.'s Mot. to Compel and for Spoliation Sanctions [Docket No. 353] ¶ 4.  DSi did not look for any evidence or trail of wiping, cleaning, or other method to delete ESI.  Stratton Spoliation Decl. Ex. B ("Spore Dep.") 99:19-24.

Because of SMS's failure to preserve Gonzalez's work computer (or its hard drive) and the importance of determining exactly when the Gonzalez memoranda were prepared, Judge Mayeron allowed Zuniga's computer consultant Lanterman to perform an additional search of Gonzalez's work computer's hard drive.  In this search, Lanterman discovered that potentially relevant documents (which contained Zuniga's name in the file name) were produced on the computer, but did not find any information on the Gonzalez memoranda.  See Order at 78-79.

---

[1] May 23, 2010 is the date given by SMS Holdings senior vice president Thomas Scott Emerson in his deposition.  Emerson Dep. 42:19-21.  In a separate affidavit, Sherry Hicks, a litigation support specialist for Miller & Martin PLLC, counsel for SMS, avers that the forensic image was made on April 23, 2010.  Hicks Aff. ¶ 4.

Based on these facts, Judge Mayeron granted Zuniga's request for Lanterman to conduct an independent forensic search of Gonzalez's work and home computer, including an assessment of the impact of the reinstallation of the operating system.  Judge Mayeron also ordered Gonzalez to submit to, and pay for, an additional deposition, limited in scope to certain information regarding his home computer and wife's laptop.  Furthermore, Judge Mayeron determined that given SMS's failure to timely preserve ESI to allow Zuniga to discover relevant information bearing on the claims or defenses of the case, SMS must search the computer hard drives of key employees[2] at its own expense.  Id. at 89.  Judge Mayeron also ordered SMS to search the deleted data from the February 2009 mirror image of its file and print server for folders relating to those key human resources employees at its own expense.  Id. at 91.  In addition, Judge Mayeron ordered SMS to search its backup tapes dating back to December 6, 2007 for folders and deleted documents relating to those employees at its own expense.  Id.

Both Gonzalez and SMS now object to portions of the Order.  Gonzalez argues that there is no evidence that he destroyed the contents of his computer, that Judge Mayeron did not analyze the proportionality of the ordered discovery and his financial situation, and that there is no good cause for reopening the deposition of Gonzalez.  See Gonzalez's Objections at 8-12.  SMS argues that Judge Mayeron did not place limits on Lanterman's additional search of Gonzalez's work computer, that it is impossible for it to comply with the Order, and that Judge Mayeron has conflated SMS's duty to preserve with its duty to produce in imposing spoliation sanctions.  See generally SMS's Objections.

---

[2]  These employees are Debbi Tannock, Mary Ellen Zander, Scott Mayer, James Powell, William Stesjkal, and Robert Williams.

# III. DISCUSSION

## A.    Standard of Review

The standard of review applicable to an appeal of a magistrate judge's order on a nondispositive issue is extremely deferential. Reko v. Creative Promotions, Inc., 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999). The district court must affirm an order by a magistrate judge unless it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Chakales v. Comm'r of Internal Revenue, 79 F.3d 726, 728 (8th Cir. 1996). "A decision is 'contrary to the law' when it 'fails to apply or misapplies relevant statutes, case law or rules of procedure.'" Knutson v. Blue Cross & Blue Shield of Minn., 254 F.R.D. 553, 556 (D. Minn. 2008) (quoting Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co., 592 F. Supp. 2d 1087, 1093 (N.D. Iowa 2008)). This Court finds that Magistrate Judge Mayeron's findings are not clearly erroneous or contrary to law. Therefore, both Gonzalez's and SMS's appeals of the Order are denied.

## B.    Gonzalez's Objections

Gonzalez argues that the Order is clearly erroneous and contrary to law for several reasons. First, Gonzalez states that there is no evidence he destroyed the contents of his computer. Therefore, Gonzalez argues that the facts "do not support the inference made that Gonzalez acted in an intentional manner to destroy evidence or data on his computer to prevent disclosure of relevant, discoverable evidence." Gonzalez's Objections at 8. Gonzalez also argues that imposing sanctions for destroying evidence requires a finding of prejudice and a

finding of bad faith.  Id.  Additionally, Gonzalez argues that Judge Mayeron did not analyze the

proportionality between Gonzalez's financial situation and the ordered discovery.  Id. at 10.

Lastly, Gonzalez argues that there "can be no good cause for reopening the deposition of

Gonzalez" and that in making her determination Judge Mayeron improperly relied on the

"unfounded, inadmissible speculation of Lanterman."  Id. at 11-12.

### 1. Cost Shifting

 This Court has no definite and firm conviction that a mistake was made when Judge

Mayeron granted Plaintiff's motion and shifted the costs and fees of Lanterman's search and the

deposition expenses to Gonzalez.  Gonzalez argues that Judge Mayeron's decision was "based

on Lanterman's factually unfounded, unsubstantiated speculation testimony."  Gonzalez's

Objections at 8.  In addition, Gonzalez argues that "the facts and record before the Court do not

support the inference made that Gonzalez acted in an intentional manner to destroy evidence or

data on his computer."  Id.  Both of Gonzalez's arguments are without merit.

Judge Mayeron did not rely solely on the statements of Lanterman.  Instead, Judge

Mayeron inferred from the *timing* of Gonzalez's actions that evidence could have been

destroyed.  See Order at 82-83 ("Further, while Gonzalez professes ignorance and innocent

reasons for his actions, the Court finds that *given the timing of his actions* and Lanterman's

testimony that reinstallation of an operating system is done in many cases to hide or destroy

relevant information, (see Lanterman Decl., ¶8), Gonzalez's conduct warrants allowing Zuniga

to do her own investigation of his personal computer.") (emphasis added).  This inference is

reasonable and well-supported by the record.  Gonzalez's counsel informed him in September

2009 of his obligation to preserve ESI, including information on his personal computer.  See

Feb.17, 2011 Gonzalez Decl. ¶ 4.  On September 22, 2010 Zuniga filed a Motion to Compel Electronically Stored Information and Other Discovery [Docket No. 211] seeking an order requiring Gonzalez to make available for forensic copying any personal or home computer he used in connection with work at SMS or communications related to the present action. Nonetheless, Gonzalez reinstalled his computer's operating system on October 5, 2010 – less than two weeks after Zuniga filed her Motion to Compel – potentially causing a loss of relevant evidence.  Prior to this reinstallation, Gonzalez had stated that he knew he must save any evidence he had, including documents on his computer.  See Oct. 1, 2010 Gonzalez Decl. [Docket No. 234] ¶ 8.  The suspicious timing of this reinstallation supports an inference that Gonzalez acted in an intentional manner to destroy evidence or data on his computer.  In addition, although Gonzalez now asserts that he did not know reinstallation could delete data, Feb. 17, 2011 Gonzalez Decl. ¶ 8, common sense would suggest reinstalling an operating system could lead to the loss of data.  Therefore, allowing Zuniga's expert to perform his own investigation of Gonzalez's computer at Gonzalez's expense is not clearly erroneous or contrary to law.

Gonzalez also argues that Judge Mayeron did not make a determination that Zuniga has suffered prejudice as a result of the loss of evidence.  When evidence is irretrievably destroyed, a party suffers prejudice as a result of that destruction.  See e.g., E*Trade Securities LLC v. Deutsche Bank AG, 230 F.R.D. 582, 592 (D. Minn. 2005) (holding that party was prejudiced as a result of information contained on hard drives being irretrievably destroyed).  Similar to the prejudice caused by the deleted hard drives in E*Trade Securities, Zuniga was prejudiced by the

loss of evidence on Gonzalez's home computer and on his wife's laptop that was sent to Mexico.

As Judge Mayeron stated:

> While Gonzalez argued that Zuniga has provided no evidence that he destroyed any relevance [sic] evidence, the fact is that due to his actions, neither Zuniga nor this Court will ever know - he sent his wife's laptop to Mexico and reinstalled the operating system on his home computer right after Zuniga served her motion seeking to have the computer's hard drive searched.

 Order at 82.

Therefore, because Zuniga has been prejudiced, the only question remaining is the *extent* of Zuniga's prejudice caused by the loss of evidence.  Judge Mayeron determined that this question must be answered by ordering a forensic search of Gonzalez's home computer and an additional deposition of Gonzalez.  Further, because the prejudice was the result of his conduct, Gonzalez must bear the costs of this additional discovery.  See id. at 83 ("The cost for Lanterman's review shall be borne by Gonzalez, as it is his actions that destroyed the contents of his computer."); see also Zubulake v. UBS Warburg, LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) ("Zubulake IV") (imposing costs of reopened depositions as interim sanctions to allow plaintiff to establish the prejudice caused by the defendant's spoliation)**.**

Contrary to Gonzalez's assertions, Judge Mayeron was not required to find that Gonzalez acted in bad faith before imposing sanctions.  "Sanctions for spoliation of the evidence may be imposed under a federal court's inherent disciplinary powers."  Stevenson v. Union Pac. R.R. Co., 354 F.3d 739, 745 (8th Cir. 2004).  As Judge Mayeron recognized in her Order, if "destruction of evidence occurs after litigation is imminent or has begun, no bad faith need to be shown by the moving party."  E*Trade Securities LLC, 230 F.R.D. at 589.  Here, there is evidence suggesting Gonzalez destroyed evidence *after* the litigation began.  Gonzalez reinstalled his computer's

operating system in October 2010, over a year after the lawsuit was commenced.  Therefore, a

finding of bad faith was not required to impose the interim sanctions.

### 2.  Proportionality

Gonzalez argues that Judge Mayeron did not appropriately consider proportionality in her

analysis.  However, the burden and expense of the additional discovery ordered does not

outweigh the benefit of the additional deposition and Lanterman's search for several reasons.

First, the actual burden on the defendant is uncertain, because the Court has not received any

evidence of Gonzalez's financial status apart from his conclusory and vague statements that he

does "not have the financial means to pay Plaintiff to resolve her claims against him" and

"ordering Gonzalez personally liable . . . is tantamount to bankrupting him."  Gonzalez's

Objections at 10.  Second, the burden and expense of this discovery was self-inflicted by

Gonzalez. See, e.g., Quinby v. WestLB AG,  245 F.R.D. 94, 104-105 (S.D.N.Y. 2006) ("[I]f a

party creates its own burden or expense by converting into an inaccessible format data that it

should have reasonably foreseen would be discoverable material at a time when it should have

anticipated litigation, then it should not be entitled to shift the costs of restoring and searching the

data."); See also The Sedona Conference Commentary on Proportionality in Electronic

Discovery, 11 Sedona Conf. J. 289, 298 (2010)  ("In assessing whether a particular discovery

request or requirement is unduly burdensome or expensive, a court should consider the extent to

which the claimed burden expense grow[s] out of the responding party's action or inaction.").

Gonzalez knew he had a duty to preserve evidence, but reinstalled his computer's

operating system anyway.  Information from the additional discovery is likely to be relevant to

determining the prejudice to Zuniga by Gonzalez's actions and is not available through any other

source.  Therefore, because the burden of the additional discovery does not outweigh its likely

benefit, the Order is not clearly erroneous or contrary to law.

### 3.  Additional Limited Deposition of Gonzalez

Rule 30(d)(1) provides, "Unless otherwise stipulated *or ordered by the court*, a deposition

is limited to 1 day of 7 hours."  Fed. R. Civ. P. 30(d)(1) (emphasis added).  "By order, the court

may alter the limits in these rules on the number of depositions and interrogatories or on the

length of depositions under Rule 30."  Fed. R. Civ. P. 26.  Trial courts have "broad discretion to

decide discovery motions."  Pavlik v. Cargill, Inc., 9 F.3d 710, 714 (8th Cir. 1993).  The

"availability of a second deposition is left to the discretion of the trial court."  Perry v. Kelly-

Springfield Tire Co., Inc., 117 F.R.D. 425, 426 (N.D. Ind. 1987).  In addition, when a party

causes the need to continue the deposition, that party bears the costs of resuming the deposition.

See e.g., F.C.C. v. Mizuho Medy Co. Ltd., 257 F.R.D. 679, 683 (S.D. Cal. 2009).

Gonzalez argues that because Zuniga knew of the existence of his personal computer and

his wife's laptop at the time of his deposition in March 2010, that no good cause can exist for re-

deposing Gonzalez.  Gonzalez states, "if Zuniga believed that Gonzalez was lying about his

computer use, she knew or should have known it back in March 2010 . . . ."  Gonzalez's

Objections at 12.  Significantly, Gonzalez reinstalled his computer's operating system in October

2010, seven months after his first deposition.  In addition, it wasn't until Gonzalez's November

2010 Affidavit that it became known that he had sent his wife's computer to Mexico as a gift and

its present location was unknown.  See Nov. 5, 2010 Gonzalez Aff. ¶¶2, 7.  Based on these facts,

unknown to Zuniga at the time of the first Gonzalez deposition in March 2010, Judge Mayeron

determined that good cause existed for Gonzalez to submit to an additional *limited* deposition.

See Order at 83-84 ("While the Court acknowledges that Gonzalez has already submitted to a seven-hour deposition, his conduct dictates that he be deposed again regarding his personal computer and his laptop."); Id. (discussing topics to be addressed during additional deposition). Because Gonzalez's actions necessitated the additional deposition, Gonzalez must pay the costs of another limited deposition deposition.  See Mizuho Medy, 257 F.R.D. at 683.  Judge Mayeron's order of an additional deposition of Gonzalez at his expense is reasonable and well supported by the facts of the case.

Gonzalez also objects to requiring him to submit to another deposition because he argues that Judge Mayeron improperly relied on Lanterman's declaration.  Gonzalez's Objections at 12. In contrast, Zuniga argues that Judge Mayeron did not need to rely on Lanterman's testimony to reach her conclusion because it is "common knowledge that reinstalling a computer's operating system can destroy data."  Pl's. Resp. To Def. Gonzalez's Objections [Docket No. 425] at 7.  The Court agrees.  Judge Mayeron did not rely solely on Lanterman's declaration to determine that Gonzalez should be re-deposed, but rather, made an independent and reasonable inference based on both (1) the common knowledge that reinstallation can destroy data and (2) the timing of Gonzalez's reinstallation.  Therefore, the portion of the Order requiring Gonzalez to submit to another deposition at his own expense is not clearly erroneous or contrary to law.

### 4. Mootness

In addition to arguing that shifting the costs of Lanterman's review of his personal computer was contrary to law, Gonzalez submitted a letter date August 25, 2011 [Docket No. 440] arguing that the entire issue is now moot because Judge Mayeron issued an Order dated July 27, 2011 [Docket No. 431] staying the shifting of the costs of Lanterman's review but not the

review itself.  Not so.  Implicit in the stay is that Lanterman's review itself may be conducted without certainty as to who will bear the costs, *or* that it may be delayed until the cost issue is decided.  July 27. 2011 Order at 2 n.2 ("If plaintiff wishes to proceed with Lanterman's review of Gonzalez's computer while Gonzalez's appeal . . . is under advisement, she *may* do so.") (emphasis added).  The issue is not moot, and with the cost issue now decided, Lanterman may proceed reviewing Gonzalez's personal computer's hard drive.

### C.  SMS's Objections

SMS argues that the Order was clearly erroneous and contrary to law in the following respects.  First, SMS argues that Judge Mayeron failed to limit the scope of Lanterman's search of Gonzalez's work computer in violation of Rule 26.  Second, SMS objects on impossibility grounds to several aspects of the Order.  SMS contends that it is impossible for it to comply with the Order's requirement to search its back up tapes dating from December 6, 2007, and deleted documents for the folders relating to certain relevant custodians.  In addition, SMS argues that it is impossible to comply with the time line for searching the February 2009 mirror image of its file and print server established by the Order.  Lastly, SMS argues that Judge Mayeron conflated SMS's duty to preserve with its duty to produce.

### 1.  Allowing Plaintiff's Expert to Search Gonzalez's Work Computer Was Neither Clearly Erroneous or Contrary to Law.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1).  Rule 26 is to be construed broadly and encompasses "any matter that bears on, or that reasonably could lead to other matter that

could bear on, any issue that is or may be in the case." In re Milk Prod. Antitrust Litig., 84 F.

Supp. 2d 1016, 1027 (D. Minn. 1997) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340,

351 (1978)); Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992) ("Rule 26(b) . . . is

liberal in scope and interpretation").  To ensure Rule 26(b) is not "misapplied so as to allow

fishing expeditions in discovery," a party must make a "threshold showing of relevance."  Hofer,

981 F.2d at 380.  The threshold requirement of discoverability is met if the information sought is

"relevant to the subject matter involved in the pending action."  Shelton v. Am. Motors, 805 F.2d

1323, 1326 (8th Cir. 1986).

SMS argues that Judge Mayeron's granting Lanterman's search of Gonzalez's work

computer is clearly erroneous and contrary to law because the scope of the search is in excess of

the relevant disclosures permitted by Rule 26(b)(1).  SMS argues that the Court did not place

limits on the discovery and that "SMS cannot conduct a relevancy or responsiveness review; it

can withhold only privileged documents and must produce any non-privileged document

discovered by Lanterman."  Id.

Zuniga argues that it is "implicit in the Court's Order that Lanterman is searching for

documents or data and evidence of deletion or destruction of data that relate to this matter."  Pl.'s

Resp. to Defs.' Objections [Docket No. 430] at 4.  Zuniga further argues SMS's Objections

"ignore the context and the procedural history leading up to this Order."  Id.  The Court agrees.

The Order allows Lanterman to search Gonzalez's work computer for evidence of

spoliation by SMS and other evidence relevant to this matter.  See Order at 88 ("SMS's failure to

preserve ESI warrants requiring SMS to conduct additional searches for *relevant* information at

its own expense as described below.") (emphasis added); Order at 93 (describing Lanterman's

"full forensic search" of Gonzalez's work computer for documents and evidence of wiping or cleaning).

Contrary to SMS's assertions, Judge Mayeron is not allowing Lanterman boundless discovery in his search of Gonzalez's work computer.  Instead, Judge Mayeron is allowing Lanterman to perform a search of Gonzalez's work computer and determine what evidence is relevant to the action and the issue of spoliation.  Only information within the scope of these areas of relevancy will be produced.   Judge Mayeron's Order is not mistaken.

**2. SMS's Impossibility Objections**

The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation.  E*Trade Sec., 230 F.R.D. at 588.  But, a party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden and cost.  Fed. R. Civ. P. 26(B)(2)(b).  "Reasonable accessibility is best understood in terms of whether the ESI 'is kept in an *accessible or inaccessible* format.'"  Best Buy Stores, L.P. v. Developers Diversified Realty Corp., 247 F.R.D. 567, 569-70 (D. Minn. 2007) (citing Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 318 (S.D.N.Y.2003)) (emphasis in original).  Pursuant to Rule 26(B)(2)(b), the party from whom discovery is sought has the burden to prove that "information is not reasonably accessible because of undue burden or cost."  Fed. R. Civ. P. 26(B)(2)(b).

**a. Back-up Tapes of the File and Print Server Dating back to December 6, 2007**

SMS states that "compliance with a vast majority of the Order . . . frankly is impossible." SMS's Objections at 4.  SMS argues that it is impossible to comply with the portions of the Order relating to searching the back-up tapes because de-duplicating the data and converting it into a

reviewable format will take a minimum of eighteen months and cost in excess of $36 million (not including attorney's fees).  Id.; Declaration of Jeff Stoneking [Docket No. 423] of DSi in Supp. of SMS's Objs. to the June 28, 2011 Order ("Stoneking Decl.") ¶¶8-10.

Zuniga first claims that SMS waived these impossibility arguments by not raising them before the Magistrate Judge.[3]  See Pl.'s Resp. to Defs.' Objections [Docket No. 430] at 7.  In the alternative, Zuniga claims that SMS's compliance with the Order is not impossible because the parties could have sought a stipulation to an extension and because the cost estimate provided by SMS was "wildly overstated."  Id. at 9-10.  Because this Court rejects SMS's impossibility claims on their merits, we do not address the issue of waiver.

SMS has not met its burden of demonstrating that the costs to restore and search the data will create an undue burden or cost.  SMS's entire argument relies on the cost estimates provided by only one vendor, DSi.[4]  DSi's cost estimates are speculative and conclusory.  Mere conclusory estimates of the cost to obtain information from electronic archives are not sufficient to prove that the information is inaccessible.  See e.g., Best Buy Stores, L.P. v. Developers Diversified Realty Corp., Civ. No. 05-2310, 2007 WL 333987, at *1 (D. Minn. Feb. 1, 2007) (affirming Magistrate Judge's Order granting motion to compel despite Defendant's outside vendor providing cost and time frame estimates for recovering certain information).  In its Objection, SMS admits that it has only provided "comprehensive estimates from one vendor for each project."  See SMS's

---

[3] Zuniga admits that "the Eighth Circuit has yet to explicitly address [the] waiver doctrine in the non-dispositive motion context."  Pl.'s Resp. to Defs.' Objections at 7.

[4] Notably, DSi was the same vendor utilized by SMS when it searched Gonzalez's former work computer.  This search was determined to be inadequate by Judge Mayeron.  See Order at 93.

Objections at 4, n. 2.  Further, by Stoneking's own admission, the estimate is entirely speculative at this stage in the litigation.  <u>See</u> Stoneking Decl. ¶ 11 (stating that his estimates are based upon a "number of industry standard assumptions, but are also dependent on certain variables and unknowns . . . that are indeterminable until the tapes are restored.")  As is discussed below, these assumptions have been challenged.  Without a more specific showing that SMS would incur an undue burden, SMS has not met its burden to prove that the information requested was not reasonably accessible because of undue burden or cost as required under Rule 26(B)(2)(b).

Because of the large difference in the estimates to complete the computer search, the Court is not left with the firm conviction that a mistake has been committed.  The price calculations, time estimates, and calculations about the amount of data on the back-up tapes provided by Stoneking have all been "strongly dispute[d]."  <u>See</u> Lanterman Decl. [Docket No. 427] ¶ 8.  Lanterman avers that back-up tapes are rarely fully utilized, it is very unlikely that all data on every tape is compressed, and Stoneking's assumptions do not match Lanterman's experience in forensic analysis of back-up tapes.  <u>Id.</u> ¶¶ 11-13.  Lanterman also states that the "$36 million cost estimate is wildy overstated," <u>id.</u> ¶ 20, and that he would feel "very comfortable bidding, sight unseen, to do the project for <u>less than one to two</u> percent of Mr. Stoneking's cost estimate," <u>id.</u> ¶ 21 (emphasis in original).  Because of the large disparity in the cost estimates between SMS's and Zuniga's experts, the Court is not left with the definite and firm conviction that a mistake has been committed.  Thus, the Order is not clearly erroneous or contrary to law.

Lastly, much of the cost to restore this data could have been avoided if SMS had fulfilled its duty to preserve evidence.  The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation.  <u>See</u> <u>Stevenson,</u>

354 F.3d at 746; see also Zubulake, 220 F.R.D. at 216.  If a party creates its own burden or expense by "converting data it should have reasonably foreseen would be discoverable into an inaccessible format it should not be entitled to shift the costs of restoring and reviewing the data." Quinby, 245 F.R.D. at 94.  In the present case, SMS could have reasonably foreseen as early as March of 2008 when it received notice that Zuniga filed her claim with the EEOC, that data on the file and print server relating to this action may be discoverable.  Nonetheless, several years later, SMS now claims that this data is stored on back-up tapes and that it will be an unduly burdensome expense for it to convert and search the data.  SMS could have avoided the cost of converting the data to a searchable format had it preserved the data in March of 2008.  SMS is not shielded from producing relevant evidence based on a cost it could have avoided.

However, both parties agree that it is technically impossible for SMS to search its back-up tapes for deleted data, as the back up tapes only save "live data" i.e., "non-deleted data."  See Pl's Res. To Defs.' Objections [Docket No. 430] at 6, n. 4; SMS's Objections at 5; Stoneking Decl. ¶3.  SMS has met its burden of proof with regards to the deleted data, and that discrete portion of the Order is reversed.

> **b.  February 2009 Mirror Image of the File and Print Server and Deleted Data relating to Debbi Tannock, Mary Ellen Zander, Scott Mayer, James Powell, William Stesjkal, and Robert Williams.**

SMS also objects as "flatly impossible" to the portion of the Order compelling it to search its file and print server.  SMS's Objections at 6.  SMS premises this impossibility argument on its assertion that it might take one week longer than the two-week deadline imposed by the Court. See SMS's Objections at 7; Bill Dean Decl. [Docket No. 422] ¶ 10.  SMS also states that the search to convert this data will cost between $9,000 and $12,000, not including attorney's fees.

Id.  In contrast, Zuniga argues that compliance with the Order is not impossible and that SMS

could have complied with the Order by seeking her stipulation to an extension and obtaining the

Magistrate Judge's approval.  See Pl.'s Resp. to Defs.' Objections at 9.

It was not impossible for SMS to comply with this deadline.  In fact, SMS's own forensic

expert, Bill Dean, provided a time frame of two to three weeks, "assuming no overtime."  Dean

Decl. ¶ 10.  SMS could have asked its forensic expert to work overtime to meet the court's

deadline.  Alternatively, if it became clear that SMS could not have met the deadline imposed by

the Order, SMS could have sought a stipulation to an extension of time between the parties or

asked the Court for additional time.  Therefore, because compliance with the deadline imposed by

Judge Mayeron was not impossible and SMS had other options to enable it to comply with the

Order, the Order was not clearly erroneous or contrary to law.

### 3.  SMS's claim that the Order conflated its duty to preserve with its duty to produce is without merit.

SMS argues that "the Court ordered these productions absent a determination that they

might result in any relevant information" and that the "Court has essentially leveled spoliation

sanctions against SMS, but has failed to consider any fact of the spoliation analysis beyond its

duty to preserve."  SMS's Objections at 8.  In addition, SMS argues that it was improper for

Judge Mayeron to impose sanctions without a determination that SMS acted in bad faith and that

Zuniga has been prejudiced by SMS's conduct.  See id. at 9-14.

Zuniga argues that SMS has "ignore[d] the present, interim posture of the Magistrate

Judge's spoliation analysis."  Pl's Resp. To Defs.' Objections at 12 (emphasis in original).  In

response to SMS's claims that the Court must determine that it acted in bad faith and that Zuniga

was prejudiced by its conduct, Zuniga argues that "The Magistrate Judge fully addressed and

correctly rejected SMS's legal argument, which it re-argues to this court." <u>Id.</u> at 12-13.

SMS's argument that Judge Mayeron did not determine whether the further productions would be relevant is baseless.  The Order discussed the relevance of these additional productions several times.  <u>See</u> Order at 64 ("According to Zuniga, she needs this evidence to determine whether defendants have spoliated evidence."); <u>Id.</u> at 67 ("As for SMS's alleged spoliation, Zuniga seeks the following remedies to determine the full extent of such conduct . . . ."); <u>Id.</u> at 86-87 ("As a result, information that may be germane to the claims, defenses, and subject matter of this action may have been lost.").  Judge Mayeron reasonably determined that the information that was either lost on Gonzalez's former work computer, had not yet been searched for on the file and print server, or was housed on the back-up tapes may have been relevant to the claims, defenses, subject matter or spoliation inquiry in this case.

Judge Mayeron also addressed SMS's argument that bad faith is required before the court may impose sanctions.  <u>See</u> Order at 64-67.  Importantly, the Order stated, "Sanctions for spoliation of the evidence may be imposed under a federal court's inherent disciplinary powers." <u>Id.</u> at 66 (citing <u>Stevenson,</u> 354 F.3d at 745).  A "finding of bad faith is not always necessary to the court's exercise of its inherent power to impose sanctions." <u>Id.</u> at 745-747.  Therefore, because a finding of bad faith was not required to impose the interim sanctions imposed by Judge Mayeron, the Order is not clearly erroneous or contrary to law.

SMS is correct that in order to grant spoliation sanctions, the Court must determine that the moving party was prejudiced by the destruction of evidence.  However, SMS's assertion that Judge Mayeron did not find prejudice is incorrect.  Zuniga has been prejudiced by the destruction of evidence in this case.  <u>See</u> Order at 86-87 ("As a result, information that may be germane to the

claims, defenses and subject matter of this action may have been lost.")  The only question that remains is to what *extent* Zuniga has been prejudiced by the destruction of evidence.  See id. at 67 ("As for SMS's alleged spoliation, Zuniga seeks the following remedies to determine the full extent of such conduct . . .")  Judge Mayeron recognized that additional discovery is necessary to determine the extent of the prejudice to Zuniga's case, and therefore ordered the additional discovery be made at SMS's expense.  This decision does not leave the Court with the definite and firm conviction that a mistake has occurred.  Therefore, the Order is not clearly erroneous or contrary to law.

In summary, SMS's Objections are overruled because Judge Mayeron did not allow Lanterman boundless discovery.  SMS has not met its burden of proving that the information requested is not reasonably accessible because of undue burden or cost.  The data and cost estimates provided by SMS were conclusory and contradicted by another expert.  Lastly, SMS's arguments that Judge Mayeron imposed spoliation sanctions without a finding of bad faith and prejudice to Zuniga are without merit because it is clear that Zuniga has been prejudiced and a showing of bad faith was not required.

### IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. Gonzalez's Objections [Docket No. 420] are **OVERRULED.**

2. SMS's Objections [Docket No. 421] are **OVERRULED.**

3. Judge Mayeron's June 28, 2011 Order [Docket No. 419] is **AFFIRMED** with the

    exception that the requirement that SMS search for deleted data on its back-up tapes is

    vacated.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  October 21, 2011.